UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN R. LEVINSON; RICHARD E. LAYTON; and DR. R. LAYTON PA 401(K) PLAN, | : : : | |
| Plaintiffs, | : | Case No. 3:09-cv-00269 (VLB) |
| | : | |
| v. | : | |
| | : | |
| WESTPORT NATIONAL BANK; | : | September 28, 2012 |
| TD BANKNORTH N.A.; | : | |
| and ROBERT L. SILVERMAN, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE [DKT. # 441]

The Defendant, Westport National Bank ("WNB"), has moved *in limine* seeking to exclude the report and testimony of the Plaintiffs' proffered industry expert, John Rodgers, from consideration at trial, as well as to exclude Rodgers' report from consideration at the summary judgment stage [Dkt. # 441].  Because Rodgers' report impermissibly reaches legal conclusions, usurps the role of the Court in instructing the jury, and usurps the role of the jury in interpreting the governing custodial agreements, this Court GRANTS the motion in part and will not consider inadmissible portions of the report at the summary judgment stage. To the extent that WNB moves to exclude the report in its entirety and to preclude Rodgers from testifying at trial, the motion is DENIED.  Finally, to the extent that the report of WNB's expert, Edward Seifried, contains similarly inadmissible content, this Court will neither consider such content at the summary judgment

1

stage nor permit similar testimony at trial.  Within twenty-one days from the date of this ruling, both parties, should they elect to do so, may re-file substitute reports which consist solely of permissible expert testimony.

I.   Background[1]

    1.   *The Rodgers Report*

Rodgers, an expert retained by the Plaintiffs, submitted an expert report dated July 1, 2011 (the "Rodgers Report").  In the Rodgers Report, Rodgers describes the scope of his engagement as

> to offer opinions on the following issues, based on custom and practice in the industry, the terms of the custodian agreement signed by all proposed Class members, and the totality of the facts and circumstances with respect to WNB's operation of the custodial accounts at issue in this case:
>
> A.   Whether [WNB] was acting in a fiduciary capacity in connection with the custodial arrangement;
>
> B.   Whether WNB's duties included verifying information being reported by Bernard L. Madoff Investment Securities ("BLMIS") and/or making inquiries of BLMIS, safeguarding custodial accountholders' assets, and maintaining accurate records; and
>
> C.   Whether WNB breached these duties in connection with its operation of the custodial arrangement.

(Merschman Decl. Ex. A (the "Rodgers Report"), at 1.)

Rodgers begins by reciting the facts that he assumed to be true for

---

[1] This ruling presumes familiarity with the underlying facts and procedural history of this matter.

purposes of his analysis.  (Rodgers Report at 2.)  In this section, Rodgers presents the facts he took as true in wording almost identical to the language the Plaintiffs used in their briefing in support of their motion for class certification.  (*Compare* Rodgers Report at 2-4 *with* Pl.'s Mem. in Supp. of Mot. for Class Certification at 4-7.)  Rodgers acknowledges that he has "summarized" the facts "taken from Plaintiffs' First Amended Complaint and Plaintiffs' Motion for Class Certification."  (Rodgers Report at 2.)

In the section containing his opinions, Rodgers first concludes that WNB acted in a fiduciary capacity in managing the custodial relationship with the Plaintiffs.  In reaching this conclusion, Rodgers offers an interpretation of the standard custodial agreement which governed the relationship between the Plaintiffs and WNB.  Rodgers interprets the contract as (1) not disclaiming a fiduciary relationship between the parties, *id.* at 4-5, (2) agreeing to provide the Plaintiffs with insufficient information to satisfy certain federal banking regulations, *id.* at 6 (citing 12 C.F.R. §§ 12.4-12.5), and (3) creating a "collective investment fund" within the meaning of certain federal banking regulations, *id.* (citing 12 C.F.R. § 9.2).

Rodgers next concludes that WNB's duties pursuant to the custodial agreement included verifying information provided by BLMIS, making appropriate inquiries to BLMIS, and maintaining "accurate" records.  *Id.* at 7-10.  He interprets a provision of the Internal Revenue Code to require WNB to verify information provided by BLMIS, and he opines that WNB's limited efforts to do so fell short of

3

industry custom. *Id.* at 7-8. He further concludes that irregularities in information BLMIS provided to WNB, as well as industry practice as expressed in the Office of the Comptroller of the Currency ("OCC") Custody Services Handbook, should have led WNB to make more pointed inquiries to BLMIS. *Id.* at 8-9.

Rodgers also concludes that WNB owed the Plaintiffs a duty, presumably arising out of the contract, although he does not state as much, to safeguard their assets and maintain adequate records. *Id.* at 9-10. This section of the Rodgers Report also largely reproduces portions of briefing which the Plaintiffs submitted to this Court in support of their motion for class certification. (*Compare* Rodgers Report at 9-10 *with* Pl.'s Mem. in Supp. of Mot. for Class Certification at 11-13.)

Finally, Rodgers concludes that, because BLMIS had not fulfilled any of the duties which he opined that WNB owed to the Plaintiffs, WNB had breached its duties to the Plaintiffs. (Rodgers Report at 7-11.)

On January 20, 2012, the Plaintiffs filed the Rodgers Report as an exhibit to their opposition to WNB's amended motion for summary judgment [Dkt. # 394-10]. On April 30, 2012, WNB filed this motion *in limine*, arguing that the Rodgers Report and Rodgers' testimony were inadmissible because (1) large sections of the report are identical to sections of the Plaintiffs' briefing in this Court on their motion for class certification, meaning that Rodgers had used unreliable methods in coming to his conclusions and is an advocate instead of a true expert; and (2) the Report and Rodgers' testimony impermissibly express legal conclusions and

4

improperly invade the province of the Court and the jury.  (WNB's Mem. In Supp. of Mot. in Limine at 2.)

### 2.    *The Seifried Report*

Seifried, an expert retained by WNB, submitted an expert report dated July 29, 2011 (the "Seifried Report").  In the Seifried Report, Seifried describes the scope of his engagement as:

> You retained me as an expert in Trust and Custody industry standards and compliance practices in addition to the regulatory standards adopted by the Office of the Comptroller of the Currency (OCC) for those business lines.
>
> You have asked me to provide a rebuttal to an Expert Report dated July 1, 2011 and authored by John Rodgers. Mr. Rodgers was given the assignment of commenting on the following three issues:
>
> A. Whether Westport National Bank (WNB) was acting in a fiduciary capacity in connection with the custodial arrangement;
>
> B. Whether WNB's duties included verifying information being reported to WNB by Bernard L. Madoff Investment Securities (BLMIS) and/or making inquiries of BLMIS, safeguarding custodial accountholders' assets, and maintaining accurate records; and
>
> C. Whether WNB breached these duties in connection with its operation of the custodial arrangement.

(Thielmann Aff. Ex. 2 (the "Seifried Report") at 1.)

Seifried details his expertise, *id.* at 1-3, then proceeds to analyze the same issues which Rodgers analyzed in his report, *id.* at 3-6.  Seifried concludes that Rodgers had reached "erroneous" conclusions.  (Seifried Report at 3, 5.)

Seifried first discusses his disagreement with Rodgers' conclusion that WNB acted in a fiduciary capacity with respect to the Plaintiffs' custodial accounts. *Id.* at 3. He opines that a fiduciary relationship in these circumstances is inconsistent with his experience in the industry, *id.*, and his experience with and understanding of standard bank examination practices, *id.* at 4. Seifried appears to conclude both (1) that Rodgers improperly arrived at the conclusions in the Rodgers Report, and (2) that WNB did not act as a fiduciary and owed no such duties to the Plaintiffs. *See id.* at 3-4.

Seifried next challenges Rodgers' conclusion that WNB had a duty to verify or inquire about the information it received from BLMIS. In concluding that Rodgers erred in making this conclusion, Seifried evaluates the custodial relationship between WNB and the Plaintiffs in comparison with his experience in the industry. *Id.* at 5-6. In this section, Seifried also offers his interpretation of certain terms of a section of the Internal Revenue Code, the governing custodial agreement, and WNB's charter. *Id.*

Seifried finally assesses Rodgers' conclusion that WNB breached its duties to the Plaintiffs to safeguard assets and maintain adequate records. Here, Seifried again opines that Rodgers' conclusions are inconsistent with his industry experience and understanding of common practices and norms in the industry. *Id.* at 6. He further concludes that, in his view, Rodgers lacked sufficient information to make certain claims about whether WNB breached the governing custodial agreements in its calculation of fees due under the

agreements.  *Id.*

In the Plaintiffs' response to WNB's motion *in limine*, filed on May 21, 2012, the Plaintiffs attached a copy of the Seifried Report and claimed, among other things, that any argument challenging the admissibility of Rodgers' expert testimony also implicated Seifried's testimony.  (Pl.'s Mem. in Opp. to WNB's Mot. in Limine at 13.)  Although the Plaintiffs did not file a motion to this effect, the Plaintiffs requested that this Court evaluate the Seifried Report on the same basis as the Rodgers Report and strike any inadmissible sections of the Seifried Report.  *Id.*

II.    <u>Standards</u>

1.    *Motion* in limine *Standard*

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citations omitted).  "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Highland Capital Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) (internal citations omitted).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Id.*  "A district court's *in limine* ruling 'is subject to change when the case unfolds, particularly if the

7

actual testimony differs from what was contained in the . . . proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

    2.    *Expert Testimony Standard*s

Expert witness testimony is admissible only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Although Rule 702 embodies a "liberal standard of admissibility for expert opinions," *Nimely v. City of N.Y.*, 414 F.3d 381, 395 (2d Cir. 2005), it also "establishes a standard of evidentiary reliability" for "all 'scientific,' 'technical,' or 'other specialized' matters within its scope," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999).  What constitutes "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153.

In addition, the Second Circuit "requir[es] exclusion of expert testimony that expresses a legal conclusion. . . .  Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992).  In *Hygh*, the Second Circuit "invoked the . . . illuminating distinction between admissible and excludable versions of an

8

expert's opinion testimony" in the advisory committee's note to Federal Rule of Evidence 704.  *Id.* at 363.

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in manner of the oath-helpers of an earlier day.  They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.  Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

Fed. R. Evid. 704 advisory committee's note, *quoted in Hygh*, 961 F.2d at 363-64.

"The distinction between fact and legal conclusions, however, is extremely fine."  *TC Systems Inc. v. Town of Colonie*, 213 F. Supp. 2d 171, 181 (N.D.N.Y. 2002).  An expert may testify about industry custom with respect to the inclusion of certain contract terms, *Nuvest, S. A. v. Gulf & Western Industries, Inc.*, 649 F.2d 943, 950 (2d Cir. 1981), industry standard practices, *see Marx & Co., Inc. v. Diners' Club Inc.* (*Marx*), 550 F.2d 505, 509 (2d Cir. 1977), or a common industry-specific trade meaning or usage of a word or term, *Moore v. Tristar Oil & Gas Corp.*, 528 F. Supp. 296, 310 (S.D.N.Y. 1981).  But an expert may not interpret a contract for the jury, *Marx*, 550 F.2d at 509-10, nor may an expert testify about the meaning of legal terms, *Schneider*, 379 F. Supp. 2d at 470.

Moreover, an expert may not "simply rehash[] otherwise admissible

9

evidence about which he has no personal knowledge. . . .  While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.  *See* [*In re*] *Rezulin* [*Prods. Liab. Litig.*], 309 F. Supp.2d [531,] 551 [(S.D.N.Y. 2004)] (rejecting portions of plaintiffs' expert's testimony that was 'a narrative reciting selected regulatory events' because '[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence')."  *Schneider*, 379 F. Supp. 2d at 468-69.

III.    <u>Discussion</u>

       1.    *Rodgers' Report Reaches Several Impermissible Legal Conclusions Which the Court Must Disregard at the Summary Judgment Stage*

      Rodgers reaches several impermissible legal conclusions.  The Rodgers Report attempts to interpret the contract, as well as several statutes and regulations, in a manner that competes with the Court's role in instructing the jury and usurps the jury's role to render appropriate legal conclusions.  The portions of the Rodgers Report which recite these conclusions are inadmissible, and the Court will disregard them at the summary judgment stage.

      First, the Rodgers Report's section on WNB's fiduciary duties contains improper legal conclusions.  Rodgers interprets the custodian agreement as not absolving WNB of any fiduciary duties in the custodial relationship; absent any evidence that his interpretation rests on some highly technical or industry-

specific meaning of its terms, this function is exclusively for the Court and the jury.[2]  *See Marx*, 550 F.2d at 510 (quoting *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969)) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge.  In neither case do we permit expert testimony.").  Rodgers further reaches conclusions about WNB's duties based on his interpretation of certain regulations he argues apply to this custodial relationship; this, too, is impermissible.  *See Schneider*, 379 F. Supp. 2d at 471 ("The [expert report] goes on to apply . . . generic legal principles to the facts of the instant case, resulting in [the expert's] giving his opinion that the securities laws have in fact been violated. . . .  This type of expert testimony is not permitted. It is inadmissible because it usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court.").  Rodgers' ultimate conclusion, that WNB owed a fiduciary duty to the Plaintiffs, is an inadmissible legal conclusion.[3]  *Harris v. Key Bank Nat'l Ass'n*, 193 F. Supp. 2d

---

[2] Rodgers does write in the Rodgers Report that certain provisions of the contract are customary in the industry and typically designed to protect the custodian bank from liability in a certain set of circumstances.  This type of evidence is admissible.  *See Nuvest*, 649 F.2d at 950 (District Court properly admitted testimony about whether certain warranties in a contract were "normal" or "customary"); *Moore*, 528 F. Supp. at 310 ("Expert testimony [is] admissible for the purpose of explaining the meaning of the technical contract terms.").

[3] Rodgers also refers to his experience in the industry in determining that, based on the specific facts of this custodial relationship, WNB owed the Plaintiffs fiduciary duties.  (Rodgers Report at 5.)  This portion of the report, which merely recites the contents of other properly admitted evidence without specific grounding in Rodgers' subject matter expertise, is also inadmissible.  *See Schneider*, 379 F. Supp. 2d at 468-69.  Although Rodgers could permissibly testify, based on his experience, that banks in similar custodial relationships

707, 716 (W.D.N.Y. 2002) ("[An expert's] opinion that the bank owed plaintiffs a fiduciary duty and that it breached that duty . . . [is] inadmissible in any event.").

Second, the Rodgers Report's section on the extent of WNB's duties and the conclusion that WNB breached those duties also contains impermissible legal opinions.  Rodgers again states opinion based on his interpretation of certain provisions in the Internal Revenue Code and certain regulations he argues apply to this custodial relationship; again, this is impermissible.  *See Schneider*, 379 F. Supp. 2d at 471.  Rodgers' attempt to conclude that WNB breached a duty to maintain adequate records and safeguard the Plaintiffs' assets is also inadmissible (Rodgers Report at 9-11); this section of the Rodgers Report does not draw on his expertise but merely restates otherwise properly admitted evidence, *see Schneider*, 379 F. Supp. 2d at 468-69.  And again Rodgers' ultimate conclusion, that WNB breached its fiduciary duties to the Plaintiffs, is an inadmissible legal conclusion.[4]  *Harris*, 193 F. Supp. 2d at 716 ("[An expert's]

---

typically manage those relationships as though they have fiduciary duties, he cannot state the legal conclusion that they owe such duties.  Nor may he simply recite the contents of other properly admitted evidence in opining about what he considers shortcomings in WNB's management of custodial relationships without identifying relevant industry standards or practices to which WNB's purported mismanagement did not adhere.

[4] This section of the Rodgers Report contains two paragraphs of admissible evidence on pages 8 and 9.  These paragraphs discuss Rodgers' opinion that WNB failed to conform to industry standard practices with respect to custodial relationships like this one and failed to act on inconsistencies in information BLMIS reported which, in his experience, a reasonable bank would have acted upon.  (Rodgers Report at 8-9.)  This testimony is admissible.  *See S.E.C. v. U.S. Environmental, Inc.*, No. 94 Civ. 6608 (PKL) (AJP), 2002 WL 31323832, at *2-4 (S.D.N.Y. Oct. 16, 2002) (an expert may testify about whether a

opinion that the bank owed plaintiffs a fiduciary duty and that it breached that duty . . . [is] inadmissible in any event.").

Accordingly, the Court grants WNB's motion with respect to the Rodgers Report and excludes the inadmissible portions of the report from consideration at the summary judgment stage.

### 2.    *Rodgers' Methods Are Sufficiently Reliable*

WNB also argues that Rodgers' testimony fails the reliability requirement of Rule 702 and should be excluded in its entirety.  WNB does not argue that expert testimony *of the type* that Rodgers offers, similar to the type Seifried offers, is unreliable.  Rather, WNB argues that Rodgers' opinions *specifically* are unreliable because he copied portions of the analysis section of his report from the Plaintiffs' briefing on their motion for class certification.  This conduct, WNB claims, reveals Rodgers as a "hired gun" who engaged in no meaningful analysis and whose opinions are so unreliable that this Court should exclude them altogether.  The Court disagrees.

First, the only portions of the Rodgers Report which offer an opinion[5] and which has meaningful copying is the section about WNB's duty to safeguard

---

practice was normal or not, but not whether it amounted to illegality or a breach of a legal duty).

[5] As already noted, the Rodgers Report's background section (Rodgers Report at 2-4) certain other portions reciting the underlying facts, *id.* at 5, also reproduce identical language found in the Plaintiffs' briefing on their motion for class certification.  Again, as already noted, Rodgers candidly acknowledged that he performed no independent factual investigation and assumed that the facts were as the Plaintiffs presented them.  *Id.* at 2.

assets and maintain accurate records.  (Rodgers Report at 9-11.)  This Court has already concluded that this section of the Rodgers Report is inadmissible because it does not draw on Rodgers' expertise but merely restates otherwise properly admitted evidence.   *See* discussion *supra* at 12-13.  Accordingly, the Court has already determined that it will not rely on this section of the report at the summary judgment stage and need not consider WNB's argument that it is inadmissible on this separate basis.

Second, the Court concludes that Rodgers' testimony is sufficiently reliable to satisfy Rule 702.  Rodgers candidly documented the process of his analysis and the materials he relied upon, including the Plaintiffs' motion for class certification briefing.  (Rodgers Report at 1-2.)  His analysis included helpful comparisons between relevant industry standard practices and WNB's management of the custodial accounts here.  *E.g. id.* at 8-9.  Limited to expert testimony of this type, the Rodgers Report and Rodgers' testimony at trial meet Rule 702's reliability requirement.

That Rodgers copied portions of his report from Plaintiffs' legal briefing and offered inadmissible opinion testimony about legal conclusions does not render his opinion so unreliable to warrant wholesale exclusion *in limine*.  Although the copying of portions of the report casts some doubt on Rodgers' credibility, WNB may use traditional methods of using this conduct to test Rodgers' testimony to vindicate its interests.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination,

14

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  And although Rodgers did offer inadmissible legal conclusions, WNB has not presented any evidence that Rodgers is so biased as to be unreliable; no evidence exists to show that he is in privity with the Plaintiffs, has some undisclosed financial interest in the outcome of this case, or is otherwise insufficiently independent to give reliable expert testimony.

The Court is satisfied that Rodgers will "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *See Kumho Tire Co., Ltd.*, 526 U.S. at 152.  The Court therefore concludes that Rodgers' opinions are sufficiently reliable to meet Rule 702's standards and will neither exclude the Rodgers Report in its entirety nor preclude Rodgers from testifying at trial as to permissible matters consistent with this ruling.

### 3.    *Rodgers May Submit a Substitute Report and May Testify at Trial*

Although several of Rodgers' conclusions are inadmissible, the Court concludes that the Rodgers Report also contains admissible content which the Court may consider at summary judgment and to which Rodgers could permissibly testify to at trial.  Accordingly, the Court will permit the Plaintiffs to submit a substitute report from Rodgers and permit his testimony at trial, as long as both the substitute report and testimony adhere to the principles discussed in this ruling.

In particular, Rodgers could permissibly opine about: (1) whether certain provisions of the contract are customary in the industry and typically designed to protect the custodian bank from liability in a certain set of circumstances, *see Nuvest*, 649 F.2d at 950; (2) the meaning of any technical terms in the contract, *see Moore*, 528 F. Supp. at 310; and (3) whether WNB conformed to industry standard practices with respect to this custodial relationship or failed to take steps a reasonable bank would have taken in the circumstances, *see U.S. Environmental, Inc.*, 2002 WL 31323832, at *2-4.

Accordingly, the Court concludes that it is appropriate to permit Rodgers to submit a substitute report which is limited to these categories or other similarly permissible areas.  The Court will similarly limit Rodgers' testimony at trial.

### 4.    *WNB's Expert Witness May Also Submit a Substitute Report and May Testify at Trial*

Like the Rodgers Report, the Seifried Report also runs afoul of the proscription against expert testimony on fundamentally legal matters.  To the extent that the Seifried Report offers a purportedly definitive interpretation of the governing custodial agreements (Seifried Report at 5), a section of the Internal Revenue Code, *id.*, or WNB's charter, *id.*, his opinion competes with the Court's role in instructing the jury and usurps the jury's role to render appropriate legal conclusions.  Moreover, to the extent that Seifried opines that WNB *did not* owe any fiduciary duty to the Plaintiffs, the conclusion is inadmissible for the same reason that Rodgers' conclusion that WNB *did* owe the Plaintiffs such duties is

16

inadmissible.  *See Harris*, 193 F. Supp. 2d at 716.  The portions of the Seifried Report which recite these conclusions are inadmissible, and the Court will, to the extent WNB offers them, disregard them at the summary judgment stage and will not permit similar testimony at trial.

The Court also concludes that it is appropriate to offer WNB an opportunity to submit a substitute report from Seifried, similar to the opportunity this Court will afford the Plaintiffs with respect to Rodgers, which conforms to the principles discussed in this ruling.  In particular, Seifried may permissibly opine about: (1) whether certain provisions of the contract are customary in the industry and typically designed to protect the custodian bank from liability in a certain set of circumstances, *see Nuvest*, 649 F.2d at 950; (2) the meaning of any technical terms in the contract, *see Moore*, 528 F. Supp. at 310; (3) any evidence that relevant bank examiners and regulators did or did not identify elements of WNB's administration of the custodial accounts as problematic; and (4) whether WNB conformed to industry standard practices with respect to this custodial relationship or took the steps a reasonable bank would have taken in the circumstances, *see U.S. Environmental, Inc.*, 2002 WL 31323832, at *2-4.

IV.   Conclusion

As stated and for the reasons articulated above, WNB's motion [Dkt. # 441] is GRANTED IN PART and DENIED IN PART.  This Court will not consider inadmissible portions of the reports which both parties submitted at the summary judgment stage.  Both expert witnesses may testify at trial.  Within twenty-one

days of the date of this ruling, both parties may re-file expert reports which do not contain impermissible conclusions of law or findings fact but which, instead, consist of permissible expert testimony as discussed in this ruling.

SO ORDERED.

Dated at Hartford, Connecticut, this 28th day of September, 2012.


_____/s/_____
Vanessa L. Bryant, U.S. District Judge
United States District Court