UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN R. LEVINSON; RICHARD E. LAYTON; and DR. R. LAYTON P.A. 401(K) PLAN<br>    PLAINTIFF,<br><br>v.<br><br>WESTPORT NATIONAL BANK;<br>TD BANKNORTH NA;<br>And ROBERT L. SILVERMAN,<br>    DEFENDANTS. | :<br>:<br>:<br>:<br>: CIVIL ACTION NO. 3:09cv269(VLB)<br>:<br>:<br>:<br>:SEPTEMBER 28, 2012<br>:<br>:<br>: |

### MEMORANDUM OF DECISION GRANTING IN PART AND DENYING DEFENDANT'S MOTION TO AMEND ITS ANSWER [DKT. #380]

This action arises out of the Ponzi scheme perpetrated by Bernard L. Madoff.  Two individuals and a pension and profit-sharing plan, along with the class they represent (collectively the "Plaintiffs"), have brought this action against: (1) Westport National Bank ("WNB"), the custodian of their retirement investments; and (2) Robert L. Silverman, the president of PSCC Services, Inc. ("PSCCSI"),[1]  the Plaintiffs' pension consulting and actuarial firm (collectively the "Defendants").[2]  The Plaintiffs and the class they seek to represent maintained

---

[1] The Plaintiffs named PSCCSI as a Defendant in their original class action complaint but, because PSCCSI filed a bankruptcy petition in April 2009, did not name PSCCSI as a Defendant in their first amended class action complaint.  (First Am. Class Action Compl. at 1 n.1.)

[2] This Court dismissed, as barred by the relevant statute of limitations, all claims against another Defendant, TD Banknorth, N.A., in its December 29, 2010 ruling on the Defendants' respective motions to dismiss and for judgment on the pleadings.  *Levinson v. PSCC Services, Inc.*, No. 3:09-cv-269 (VLB), 2010 WL 5477250, at *6-7 (D. Conn. Dec. 29, 2010) (ruling on motions to dismiss and motion for judgment on the pleadings).  In addition, on March 18, 2011, Silverman

1

custodial accounts with WNB for their investments.  WNB invested the Plaintiffs' assets with Bernard L. Madoff Investment Securities, LLC ("BLMIS").  After Madoff admitted his fraud, the Plaintiffs realized that their investments were lost and commenced this class action.  Before the Court is WNB's motion to amend its answer in order to add (1) a *res judicata* affirmative defense against class members who brought actions which were ultimately dismissed pursuant to the Securities Litigation Uniform Standards Act ("SLUSA") and (2) an unjust enrichment counterclaim against class members who withdrew more from their investment accounts than the deposited (the "net winners").  As the Plaintiffs have consented to the inclusion of the *res judicata* affirmative defense in the proposed amended answer, the Court GRANTS WNB leave to amend its answer to assert this defense.  For the foregoing reasons, the Court DENIES WNB leave to amend its answer to assert an unjust enrichment counterclaim on the basis of futility.

Background

On December 14, 2011, the Court (Dorsey, J.), granted the Plaintiffs' motion for class certification [Dkt. # 368].  The certified class includes: "All persons or entities that were beneficiaries of the omnibus account at BLMIS maintained in the name of WNB as of December 11, 2008.  The class excludes: (1) WNB, (2) all

---

filed a bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut and a notice of the petition in this Court on March 31, 2011 [Dkt. # 283]; although Silverman has not formally invoked the automatic stay protections of 11 U.S.C. § 362 (2006), his counsel has withdrawn, and he is no longer actively litigating this matter.  WNB is therefore the only remaining active Defendant.

entities of which WNB is a parent or in which WNB holds a controlling interest, (3) all entities of which WNB is a subsidiary, and (4) any officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors, or assigns of WNB or its parents, controls, or subsidiaries. This class is subject to further adjustment or decertification as required." (Class Certification Ruling at 34.)

On January 20, 2012, WNB moved to amend its answer in order to assert a *res judicata* affirmative defense against class members who were parties to an earlier action dismissed because of SLUSA preemption.  WNB removed that action, originally filed as several different actions in state court and subsequently consolidated in state court, to this Court.  *Backus v. Conn. Cmty. Bank*, 789 F. Supp. 2d 292, 296 (D. Conn. 2011).  The Court (Dorsey, J.) concluded that the action, as consolidated and removed, was preempted by SLUSA and dismissed it. *Id.* at 308.  WNB's proposed affirmative defense claims that the members of the class who were party to that action had their claims dismissed on the merits and are therefore precluded from recovering as members of the class.  (Proposed Am. Ans. at 21, Sixth Affirmative Defense.)

Simultaneously, WNB also moved to amend its answer in order to assert an unjust enrichment counterclaim against the class members who are net winners. The proposed counterclaim is contingent on the Plaintiffs recovering contributions to their custodial accounts on one of their breach of contract theories.  (WNB's Mem. in Supp. of Mot. to Amend at 16.)  Under this theory, WNB breached the governing custodial agreements when it failed to administer the

3

custodial arrangement by making infrequent transfers between WNB and BLMIS. The Plaintiffs interpret the custodial agreement as requiring WNB to transfer contributions to BLMIS as soon as they were received and request transfers from BLMIS whenever an account holder requested a distribution or administrative costs and fees came due.  (*Id.* at 15-16.)  WNB interpreted the custodian agreement not to require such frequent transfers. Relying on its interpretation, WNB administered the custodial arrangement with few transfers between WNB and BLMIS; as cash contributions flowed in, WNB used them to pay fees, costs, and distribution requests, and, on the infrequent occasions when the cash contributions were insufficient to satisfy such needs, WNB requested additional funds from BLMIS.  (*Id.* at 6-7.)  According to WNB, if the Plaintiffs recover their distributions based on the theory that this administration of the custodial arrangement breached the custodial agreements, then the net winners would be unjustly enriched.  (Proposed Counterclaim ¶¶ 44-45.)

### Legal Standard

Leave to file amended pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *State Teachers Retirement Fund v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  A proposed amendment "is futile if the proposed claim could not withstand a [Rule 12(b)(6) motion to dismiss.]"  *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

In order to survive a motion to dismiss, a pleading must set forth "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and is inadequately pled "if it tenders naked assertion[s]" devoid of "further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true.  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." *Bell Atl.,* 550 U.S. at 555.

Analysis

    1.    *Res judicata affirmative defense*

The Plaintiffs, without conceding the merits of WNB's proposed affirmative defense, consent to WNB's proposed amendment to add such a defense.  The Court therefore grants WNB leave to amend its answer to assert this defense.  As the applicability of the defense is a pure question of law, the parties are directed brief this issue by December 1, 2012.

    2.    *Unjust enrichment counterclaim*

To the extent that WNB's proposed counterclaim is predicated solely on Plaintiffs' succeeding on their breach of contract claim on the basis of WNB's administration of the custodial accounts by failing to make frequent transfers between WNB and BLMIS and maintaining a comingled clearing account, WNB's

5

motion to amend is moot as the Court has granted summary judgment in favor of WNB as to that claim. See [Dkt. #457 ]. To the extent that WNB's proposed counterclaim can be more broadly construed, the Court finds that it would be futile to permit amendment.

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994). "Although unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving, for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit." *Town of New Hartford v. Conn. Resources Recovery Authy.*, 291 Conn. 433, 468, 970 A.2d 592 (2009). "It is the plaintiff's burden to prove the elements of a claim of unjust enrichment, including that the defendant was benefit[t]ed." *Town of Stratford v. Castater*, 136 Conn. App. 522, 2012 WL 2384399, at *5 (July 3, 2012).

WNB pleads that the net winners would be unjustly enriched if the Plaintiffs prevail on their claim that the custodial agreements did not permit WNB to administer the clearing account as it did and recover contributions they made to their custodial accounts based on two theories: (1) the administration of the clearing account benefitted the net winners, because actually sending their contributions to BLMIS would have left the net winners unable to withdraw as much as they did (WNB's Reply Br. in Supp. of Mot. to Amend at 6-7); and (2) the

6

payment of the distributions in excess of deposits by itself benefitted the net winners, (Proposed Counterclaim ¶ 44).  Neither theory, as pleaded, plausibly states an unjust enrichment claim.

WNB has not successfully pleaded that the manner of administering the clearing account benefitted the net winners.  WNB pleads, in the proposed counterclaim, the undisputed fact that BLMIS continued to fund distributions through 2008.  (Proposed Counterclaim ¶ 26.)  WNB's decision to administer the clearing account as it did, with minimal transfers between BLMIS and WNB, thus had no effect on the net winners' ability to withdraw from their accounts.  As WNB stated in its summary judgment briefing, "[i]f WNB had transferred money to BLMIS every time a customer contributed to his account, as Plaintiffs claim WNB should have done, WNB would have had to immediately request equivalent transfers back from BLMIS to pay distributions and fees."  (WNB's Opp. to Pl.'s Mot. for Partial Summ. J. at 24.)  WNB has pleaded that these equivalent transfers would have been funded through 2008.  (Proposed Counterclaim ¶ 26.)  The choice of administrative mechanisms therefore could not constitute a benefit to the net winners because WNB has pleaded that the net winners' distributions would have been fully funded under both mechanisms.  (*See id.*)  The parties agree that Madoff perpetrated a Ponzi scheme in which the deposits of one customer were used to make payments to another.  Consequently, the so-called net losers have failed to plead that WNB's administration of the custodian agreements caused the net-losers any loss.  Because WNB cannot plausibly

claim that the net winners benefitted from its conduct on this theory, the claim as premised on this theory is futile.

On the second theory, the net winners certainly did receive a benefit in the form of the monetary distributions from their custodial accounts. But WNB has also pleaded facts showing that the Plaintiffs contracted for the ability to withdraw funds they had invested as they saw fit (*see* Proposed Counterclaim ¶ 12 (quoting the custodial agreement's provision about remitting an account holder's funds at his or her direction)), and paid WNB for the benefit (*see id.* ¶ 27 (alleging that all account holders paid fees to WNB for administering the custodial arrangement)). WNB therefore cannot plausibly allege that the net winners received any benefit for which they did not bargain and pay in good faith.[3] Nor has WNB alleged any facts[4] suggesting that it has a "superior equitable entitlement to" the monetary distributions from the net winners' custodial accounts. *See Town of New Hartford*, 291 Conn. at 468. Similarly, because WNB cannot plausibly claim that the net winners did not pay for the

---

[3] Of course, the *amount* of the payment is also disputed in this litigation. WNB has not argued that the Plaintiffs' recovery on their claims that WNB charged fees in a manner inconsistent with the custodial agreements would mean that the Plaintiffs were unjustly enriched.

[4] WNB's conclusory allegations that "[i]t is contrary to equity and good conscience for the Counterclaim Defendants to retain the benefits of those distributions" (Proposed Counterclaim ¶ 44), and "Defendants will have been unjustly enriched at the expense of WNB, and it would be contrary to equity and good conscience for the Counterclaim Defendants to retain the benefits of those distributions" (*id.* ¶ 45), are legal conclusions which need not be taken as true, *Iqbal*, 556 U.S. at 678.

benefit of withdrawing their distributions or that WNB has a superior right to those distributions, the claim as premised on this theory is also futile.

Because WNB's proposed counterclaim does not, and cannot, plausibly allege facts which could support a finding on each material element of unjust enrichment in its favor, the Court finds that the proposed counterclaim is futile. Accordingly, the Court denies WNB leave to amend its answer to assert such a counterclaim without opportunity to replead.[5]

### 3. Credit / remittitur

To the extent that WNB argues that any future recovery resulting from this litigation may result in unjust enrichment because it may constitute a double recovery or other windfall to the net winners, this argument is more appropriately construed as one for a credit against any future recovery or a remittitur against any future verdict. Such a damages argument need not be pleaded and is premature at this stage.

In Connecticut, a defendant may seek "a credit against the amount of its liability to the extent [prior payments] would result in 'double recovery.'" *United Techs. Corp. v. Am. Home Assurance. Co.* (*United Techs.*), 237 F. Supp. 2d 168, 171 (D. Conn. 2001) (citing *Imbrogno v. Chamberlin*, 89 F.3d 87, 90 (2d Cir. 1996); see also *Mariculture Prods. Ltd. v. Those Certain Underwriters at Lloyd's of*

---

[5] Since the Court has denied WNB leave to amend based on futility, the Court need not address the number of procedural arguments Plaintiffs have raised including their argument that amendment is untimely and that adding a counterclaim would require supplemental notice to the class resulting in delay and prejudice. Error! Main Document Only.(Pl.'s Mem. in Opp. to WNB's Mot. to Amend at 15-18.)

*London Individually Subscribing to Certificate No. 1395/91* (*Mariculture*), 84 Conn. App. 688, 704-705, 854 A.2d 1100 (2004) (denying credit where "the possibility of double recovery is lacking"). When a jury verdict awards a double recovery which is impermissible as a matter of law, a party may also seek a remittitur pursuant to Conn. Gen. Stat. § 52-216a. *Imbrogno v. Chamberlin*, 89 F.3d 87, 90 (2d Cir. 1996) ("Under Connecticut law, a court may grant remittitur only when the jury verdict is excessive as a 'matter of law.'"). Unlike a setoff, affirmative defense, or counterclaim, a party seeking a credit need not plead its right to such relief and may raise it during or after trial. *See Mariculture*, 84 Conn. App. at 702-703. A party seeking a credit bears the burden of showing that double recovery has occurred and that a credit is proper. *See id.* at 705; *see also Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 114, 952 A.2d 1 (2008) (party seeking remittitur bears burden to show duplicative recovery).

Here, WNB correctly argues that the ultimate damages calculation, if any, should not permit the net winners to recover twice or receive a windfall. Connecticut law permits WNB to raise this argument during and after trial, in the form of a remittitur or a request for a credit against amounts already paid. Consequently, this Court's ruling does not prohibit WNB from raising this argument at trial or during post-trial briefing.

IV.     <u>Conclusion</u>

As stated and for the reasons articulated above, WNB's motion [Dkt. # 380] to amend its answer is DENIED IN PART and GRANTED IN PART. WNB is

permitted leave to amend its answer to include an affirmative defense of *res judicata* but leave is denied to assert a counterclaim of unjust enrichment.

                                                    IT IS SO ORDERED.

                                              _____/s/_____
                                              Hon. Vanessa L. Bryant
                                              United States District Judge

Dated at Hartford, Connecticut: September 28, 2012