UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN R. LEVINSON; RICHARD E. LAYTON; AND DR. R. LAYTON P.A. 401(K) PLAN : : : | |
|     PLAINTIFF, : | CIVIL ACTION No. 3:09cv269(VLB) |
|         v. : : | |
| WESTPORT NATIONAL BANK; :     DEFENDANT. : | |
| ----------------------------------------------------------------X | |
| AUDREY SHORT, INDIVIDUALLY AND FAYE SHORT, INDIVIDUALLY AND AS TRUSTEE FOR THE FAYE S. ALBERT RETIREMENT PLAN, ALBERT RETIREMENT PLAN. : : : : : : | |
|     PLAINTIFFS, : | CIVIL ACTION No.3:09-cv-1955(VLB) |
|         v. : : | |
| CONNECTICUT COMMUNITY BANK, N.A. :     DEFENDANT. : | |
| ----------------------------------------------------------------X | |
| SOL DAVIS, INDIVIDUALLY AND AS TRUSTEE OF THE SOL DAVIS RETIREMENT PLAN, ET AL. : : : : | |
|     PLAINTIFFS, : | CIVIL ACTION No. 3:10cv261(VLB |
|         v. : : | |
| CONNECTICUT COMMUNITY BANK, N.A. : OWNER OF WESTPORT NATIONAL BANK :     DEFENDANT. : | MAY 20, 2013 |
| ----------------------------------------------------------------X | |

## ORDER ON MOTIONS IN LIMINE

    **A. Motion *In Limine* to exclude evidence relating to operation of custodial accounts at Westport Bank & Trust [*Levinson* Dkt. #515]; [*Davis* Dkt. #304]; [*Short* Dkt. #181]**

1

**The Court GRANTS IN PART AND DENIES IN PART the Plaintiffs' motion** *in limine* **to exclude testimony and evidence relating to the practices, protocols and procedures followed by Westport Bank & Trust ("WBT") with respect to the custodial accounts that were transferred to the Bank[1] in 1999. Under the Federal Rules of Evidence, evidence of the routine practice of an organization is relevant to prove, or generally admissible to prove, that the conduct of the organization on a particular occasion was in conformity with routine practice. Fed. R. Evid. 406. The routine practice of WBT is not at issue in this case, except perhaps for purposes of establishing a standard of care and for calculating damages. However the routine practices of WBT in performing their custodial duties under the custodian agreement, standing alone, is insufficient to establish the requisite standard of care and thus its probative value as to the standard of care would be outweighed by the danger of misleading the jury, needlessly repeating cumulative evidence and confusing the issues. Fed. R. Evid. 403. Therefore the Defendant may submit evidence of the prior operation of the custodial accounts solely on the issue of damages. Fed. R. Evid. 402.**

> **B.   Motion** *In Limine* **to exclude evidence regarding the Madoff criminal cases and Motion** *In Limine* **to admit into evidence of Madoff criminal informations and plea allocutions [*Levinson* Dkt. ##516, 522]; [*Davis* Dkt. ##294, 305]; [*Short* Dkt. ##182,187]**

**The Court GRANTS IN PART AND DENIES IN PART the parties' cross-motions** *in limine* **regarding the Madoff criminal informations and plea**

---

[1] The *Short* and *Davis* Plaintiffs only named Connecticut Community Bank, N.A. ("CCB") as a defendant in this action while the *Levinson* Plaintiffs only named Westport National Bank ("WNB") as a defendant.  However, these actions only concern the Plaintiffs' relationship with WNB, a division of CCB.  For simplicity, the Court will refer to the Defendant as "the Bank" throughout this ruling.

allocutions.  The Plaintiffs seek to preclude and the Defendant seeks to admit the criminal informations and plea allocutions of Benard Madoff, Madoff's lieutenant, Frank Di Pascali, and his outside auditor David Friehling.  Plaintiffs argue that these exhibits are not relevant and inadmissible hearsay.  Defendant argues that the exhibits are relevant to the Bank's defense of superseding cause in which it contends that the criminal acts of Madoff broke the chain of causation between its conduct and the alleged injury and further bears on the question of whether an audit would have uncovered Madoff's fraud, the detection of which he evaded for decades.  The Defendant argues that the criminal informations and plea allocutions are admissible under either the public records exception to the hearsay rule, the exception for facts necessary to a judgment of prior conviction or for the plea allocations as statements against penal interest.   Fed. R. Evid. 803(8), 803(22), 804(b)(3).  Lastly, the Defendant argues that these exhibits are admissible under the residual exception to hearsay because of the procedural safeguards to ensure veracity afforded during a criminal adjudication. Fed. R. Evid. 807.

Although the criminal informations are relevant evidence, the Court is not persuaded that they qualify under either the public records or the judgment of a conviction exceptions to hearsay.  *See* Fed. R. Evid. 803(8) and (22) respectively.  As a criminal information is a charging documents similar to a civil complaint which makes allegations unsupported by evidence, they do not set out a matter observed while under a legal duty to report.  An analogy to judicial notice principles is instructive to understanding the parameters of the public records

hearsay exception with respect to documents filed in another court. It is well established that "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yatch Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks and citation omitted). "Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source." *Id.* In line with this rationale, the fact that a criminal information was filed would be a public record, whereas the facts alleged in that criminal information would not be a public record and therefore could not be used to prove the truth of the matter asserted therein. Thus, the information would only be admissible to the extent the defendant was convicted of an offense charged in the indictment, either by trial or plea, the judgment of conviction was offered along with the information and the information was necessary to understand the judgment as discussed below. Fed. R. Evid. 106.

The Court is also not persuaded that the criminal informations fall within the exception for judgment of a previous conviction under Fed. R. Evid. 803(22) as a criminal information is not evidence admitted to prove any fact essential to the judgment but again merely the charging document. *See In re WorldCom, Inc. Sec. Litig.*, No.02CIV3288DLC, 2005 WL 375315, at *9 (S.D.N.Y. Feb. 17, 2005) (holding that Rule 803(22)'s exception does not apply to indictments because "[t]hat exception addresses judgments of conviction, not indictments or charging

4

instruments.")  Further, a criminal information is not necessary under the doctrine of completeness to understand the plea allocutions.  *Id.* (holding that indictments "are unnecessary to place the pleas in context, or under the doctrine of completeness, *see* Fed.R.Evid. 106, since they are not statements of the defendants that are necessary to complete the statements made by them during the plea allocutions. Nor is it possible to justify their admission by urging that they are not hearsay. They are hearsay, since the only purpose is to offer the documents for the truth of the statements contained in them.").

Lastly, because a criminal information is a charging document not supported by evidence, there are no circumstantial guarantees of trustworthiness which would render them admissible under the residual exception.  *Id. (*"Federal Rule of Evidence 807 requires that the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts" and that "the general purposes of [the Federal Rules of Evidence] and the interests of justice will best be served by the admission of the statement into evidence. The indictments are far less probative than the admissible evidence that is available to the parties in this lawsuit, and the general purposes of the Rules of Evidence and the interests of justice would in fact be undermined, instead of served, by admitting the documents.") (internal quotations marks and citations omitted).  The Defendants are therefore precluded from offering the criminal informations into evidence at trial.

The Court is persuaded that the plea allocutions are admissible under the residual hearsay exception.  Under Rule 807, a statement will be admitted if "(1)

5

the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." Fed. R. Evid. 807.  Here, the plea allocutions are offered as evidence of the material fact of damages and the Defendant's defense of superseding cause and is more probative on this point than other evidence the Defendant can obtain through reasonable efforts.  The Court is also persuaded that the statements in the plea alloutions demonstrate a high guarantee of trustworthiness as a result of the safeguards that a sentencing judge must take in order to accept a guilty plea under Rule 11 of the Federal Rules of Criminal Procedure.  Under Rule 11, a sentencing judge is required to ensure that each guilty plea is voluntary and has a factual basis which is developed on the record at the plea allocation. Fed. R. Crim. P. 11.  Further, the trustworthiness of a plea allocution is bolstered by the fact that the criminal defendant gives his statements during the allocation sworn under oath.  As the Second Circuit commented, "[i]t is hard to conceive of any admission more incriminating to the maker or surrounded by more safeguards of trustworthiness than a plea of guilty in a federal court." *U.S. v. Winley*, 638 F.2d 560, 562 (2d Cir. 1981).  Lastly, admission of the plea allocutions would facilitate the interests of justice in this case as it bears on material facts in dispute.   Accordingly, the Defendants may offer the plea allocutions at trial.

    C. Motion *In Limine* to exclude evidence relating to inspections, examinations, or investigations of BLMIS by regulatory or law

enforcement agencies  [*Levinson* Dkt. #306]; [*Davis* Dkt. #306]; [*Short* Dkt. #183]

The Court GRANTS the Plaintiffs' motion *in limine* to preclude Defendant's proposed Exhibits 1627, 1628, 1629, 1630 and preclude any testimony or evidence relating to inspections, examinations or investigations of Bernard L. Madoff or Barnard L. Madoff Investment Securities, LLC ("BLMIS") by the Securities and Exchange Commission ("SEC") or any other regulatory or law enforcement agency without prejudice to filing a timely motion for reconsideration.  Although the Court finds that the proposed exhibits fall within the public records exception to hearsay, Fed. R. Evid. 803(8), and can be authenticated at trial through the SEC website, given the sophisticated and technical language and content of the examinations and reports, a reasonable juror would not be able to discern the probative value of the reports on their own.  Further, some of the content of the reports appear to be irrelevant to the remaining claims as one examination inquired into whether BMIS engaged in market manipulation through its proprietary knowledge of customer orders.  This Order is without prejudice to Defendant demonstrating how the exhibits would be offered and explained to the jury in a manner in which its probative value would be evident and not outweighed by the danger of misleading the jury and confusing the issues.  Fed. R. Evid. 403.

    D. Motion *In Limine* to exclude evidence of "Net Winners" in the liability phase of the trial [*Levinson* Dkt. #518]; [*Davis* Dkt. #307]; [*Short* Dkt. #184]

**The Court GRANTS IN PART AND DENIES IN PART the Plaintiffs' motion *in limine* to preclude the use of the phase "net winner" at trial as prejudicial and from the submission or eliciting of any testimony or other evidence regarding whether any Plaintiff or class member withdrew more money than deposited during the liability phase of trial.  The Court denies the Plaintiffs' request to preclude the use of the term "net winner" as the Plaintiff can mitigate any potential prejudice from the use of the term by explaining its meaning and their theory of damages.  As to the evidence that certain Plaintiffs or class members withdrew more than contributed to their custodial accounts, the Court will permit the Defendant to introduce this evidence but preclude the Defendant from quantifying these amounts during the liability phase of the trial.  Therefore, Defendant is permitted to elicit evidence that certain Plaintiffs and class members withdrew more than contributed but are precluded from offering evidence of the actual amounts during the liability phase of trial as it would be a waste of time and resources as well as prejudicial to allow the Defendant to quantify these amounts.  The Defendant will only be permitted to offer evidence of the quantity during the damages phase of trial.**

      **E. Motion *In Limine* to exclude evidence regarding the Bank's community involvement [*Levinson* Dkt. #519]; [*Davis* Dkt. #308]; [*Short* Dkt. #185]**

**The Court GRANTS the Plaintiffs' motion *in limine* to exclude evidence relating to the Bank's community involvement such as its charitable contributions and its practice of lending to local businesses as described in**

Defendant's Trial Witness List (Exhibit C to the Joint Trial Memorandum) as such evidence is not relevant to any claim or defense at issue.  Fed. R. Evid. 402.

> F. Motion *In Limine* to exclude opinions from Defendant's Banking Practices Expert, Edward E. Seifried regarding common law standards of conduct [*Levinson* Dkt. #520]; [*Davis* Dkt. #302]; [*Short* Dkt. #178]

The Court finds the Plaintiffs' motion *in limine* to exclude Defendant's Expert Seifried from giving opinions on common law standards of conduct pursuant to Fed. R. Evid. 702 to be MOOT.  The Plaintiffs argue that because Seifried testified that he has no knowledge or expertise with respect to Connecticut common law, he should be precluded from offering opinions regarding common law standards of conduct.  In response, Defendant clarifies that it was never its intention to elicit testimony regarding common law standards of conduct from Seifried thereby rending the motion *in limine* moot.

> G. Motion *In Limine* to exclude all evidence relating to the Plaintiffs' claims in the BLMIS Bankruptcy [*Levinson* Dkt. #523]; [*Davis* Dkt. #295]; [*Short* Dkt. #188]

The Court GRANTS the Defendant's motion *in limine* to exclude evidence relating to the Plaintiffs' claims under the Securities Investor Protection Act ("SIPA") relating to the bankruptcy of BLMIS.  This Court has twice addressed at length the Plaintiffs' arguments regarding SIPA; first in the Court's opinion on summary judgment in *Levinson* and then for a second time in the Court's opinion on summary judgment in *Davis*.  Both times, the Court granted judgment as a matter of law against the Plaintiffs on their claims and theory of damages regarding the loss of SIPA protection.  Now the Plaintiffs have for a third time

9

tried to resurrect their arguments regarding SIPA despite the fact that this Court has twice ruled on them.  If the Plaintiffs disagree with the Court's ruling, their ultimate recourse is to appeal the Court's decisions and not to sidestep around and disregard the Court's prior rulings at trial.  Plaintiffs' counsel is reminded that no claims relating to SIPA remain extant and therefore any evidence of a purported loss of SIPA protection is irrelevant to the remaining claims that will be tried.  Fed. R. Evid. 402.

> H.  Motion *In Limine* to exclude cumulative expert testimony [*Levinson* Dkt. #524]; [*Davis* Dkt. #296]; [*Short* Dkt. #189]

The Court GRANTS the Defendant's motion *in limine* to exclude cumulative industry expert testimony by Plaintiffs without prejudice to the Plaintiffs filing a motion seeking to permit more than one expert to testify on a particular subject matter in which the Plaintiffs identify the actual and specific substance and content of the testimony and explain why such testimony would not be cumulative and duplicative.  It is well established that under Fed. R. Evid. 403, the Court may exclude needlessly cumulative evidence.  Here, the Defendant argues that it would be needlessly cumulative to permit all three Plaintiffs' experts to testify as to the same subject matter.  Plaintiffs broadly argue that testimony from all three experts will not be cumulative because the experts have different professional backgrounds and perspectives.  However without more that fact alone is insufficient to demonstrate that such testimony is not cumulative.  It is only where an additional expert addresses a distinct issue that such testimony would not be cumulative.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods.*

*Liab. Litig.*, MDL No. 1358, M21-88, 2008 WL 1971538, at *13 (S.D.N.Y. May 7, 2008) ("I have instructed the parties in these cases that, due to the large number of expert witnesses, it is important that each expert address a distinct issue and cumulative expert testimony will not be allowed. Although the two experts both address ethanol production capacity, Huggins' testimony is distinct from Reynolds'. Huggins discusses the importance of long-term contracts to help finance plant expansion and new plant construction, whereas Reynolds discusses the logistics of ethanol production, transportation, and blending."). Therefore, the Plaintiffs are precluded from offering more than one expert to testify on a particular subject matter without prejudice to seeking leave to do so on a showing that such additional testimony would not be cumulative.

I. Motion *In Limine* to exclude evidence about the Bank's transfers to BLMIS [*Levinson* Dkt. #525]; [*Davis* Dkt. #297]; [*Short* Dkt. #190]

The Court GRANTS IN PART AND DENIES IN PART the Defendant's motion *in limine* to exclude at trial any argument or implication that the Bank acted inappropriately in transferring money only two times from the deposit account the Bank used to administer the custodial arrangement to BLMIS. Evidence as to how the Bank operated the custodial accounts including the fact that the Bank administered the custodial services accounts in a manner which minimized the number of physical transfers which took place between the Bank and BLMIS is relevant to the remaining claims at trial and therefore admissible. However, the Court grants the Defendant's request that the Plaintiffs be precluded from offering evidence that the Bank acted inappropriately when it only physically

11

transferred funds to BLMIS twice.  As explained at length in this Court's decision on summary judgment in *Davis*, the Plaintiffs' theories that the Bank inappropriately used or absconded with customer contributions to fund fees and redemptions, commingled funds, and failed to immediately transfer all contributions to BLMIS are without merit and therefore evidence of the impropriety of such a practice would be irrelevant, misleading to the jury and prejudicial.

> J. Motion *In Limine* to exclude evidence of alleged damages relating to investments made prior to July 1999 [*Levinson* Dkt. #526]; [*Davis* Dkt. #298]; [*Short* Dkt. #191]

The Court DENIES IN PART AND GRANTS IN PART the Defendant's motion *in limine* to exclude evidence of alleged damages relating to investments made prior to July 1999.  First, Defendant argues that as a matter of law the Bank's alleged breaches could not have caused any losses relating to money the Plaintiffs contributed to their accounts before the Bank became custodian. This argument lacks merit.  To the extent a Plaintiff invested money with BLMIS during WBT's tenure as trustee, did not withdraw those funds prior to the Bank's tenure as trustee and the funds were included in the Plaintiff's account balance when the Bank became trustee, the Plaintiff could have incurred a loss under the Bank's tenure for funds invested during WBT'S tenure.  Second, the Defendant also argues that these losses could not have been caused by the Bank because the funds in the BLMIS account were already stolen by Madoff when the Bank became custodian.  It is a question of fact as to whether the funds were stolen by Madoff when the Bank became custodian and thus this argument fails.  Defendant

12

further argues that even if it had audited BLMIS and discovered Madoff's scheme, it would have been required to immediately inform law enforcement officials and therefore no BLMIS investors would have been able to withdraw any funds after Madoff was arrested.  Again, this argument relies on facts which are not established.  In the alternative, Defendant argues that any evidence of lost investment income or lost "fictitious profits" should be excluded noting that the *Levinson* expert has submitted a report which provides a damages calculation based on the earnings the Plaintiffs allegedly could have made between 1986 and 1999 had they invested their money elsewhere.  Defendant also argues that the "law" does not permit the Plaintiff to profit from Madoff's illegal conduct and therefore they may not base their damages calculation on the reported balances in the BLMIS account as of July 1999 when the Bank became custodian.  Defendant cites no authority for this proposition and the Court cannot divine any.  There are myriad legal theories implicated by this argument, none of which are advanced and therefore the Court has no basis to grant the motion on this basis.

      The Plaintiffs rightly contend that the premise of the Defendant's motion *in limine* is routed in facts which are in dispute.  The Plaintiffs further argue that if the Bank had been unable to confirm the existence of the assets in the BLMIS account, they might have been able to withdraw their assets from BLMIS without the Ponzi scheme unraveling.  The Court agrees that there are material facts in dispute which underlie the parties' theory of damages in connection with the reported balances in the BLMIS account when the Bank took over as custodian and therefore the Court will not preclude the Plaintiffs from offering evidence of

damages calculated on the basis of those reported balances when the Bank became custodian.

The Plaintiffs may not however offer evidence of the earnings they could have made between 1986 and 1999 had they invested elsewhere as the Bank's breaches including the alleged failure to audit in 1999 and onward could not have proximately caused those damages from 1986 to July 1999.  Therefore, the Plaintiffs may offer damages evidence based on the reported balances in the BLMIS account when the Bank became custodian but are precluded from offering evidence of the earnings they could have made if they had not invested in BLMIS prior to the date the Bank became custodian.

    **K.  Motion *In Limine* to exclude Plaintiffs' reliance on IRS Forms 5305 and 5498 [*Levinson* Dkt. #527]; [*Davis* Dkt. #299]; [*Short* Dkt. #192]**

The Court GRANTS the Defendant's motion *in limine* to exclude the Plaintiffs' reliance on IRS Forms 5498 and/or 5305.  As the Defendant points out, this Court has granted summary judgment against the Plaintiffs on their theory that the Bank breached its obligations under IRS Forms 5305 and 5498 and therefore argues that these Forms are irrelevant to the remaining claims.  In response, Plaintiffs try to bootstrap the IRS Forms into the Custodian Agreements by arguing that under well-established principles of contract interpretation the IRS Forms should be construed along with the Custodian Agreements to determine the intent of the contracting parties and the meaning of ambiguous terms in the Custodian Agreement because the IRS Forms and the Custodian Agreement relate to the same transaction.  However, this argument

14

lacks merit because the IRS forms were not mentioned or incorporated by the parties into the Custodian Agreements.  Further the forms were not negotiated or drafted by either the Plaintiffs or the Defendant in this action but a model agreement created by the IRS to help ensure that a custodial account would meet the requirements of § 408 of the Internal Revenue Code to obtain preferred tax treatment and therefore the content of the model forms would not be probative of the parties' intent regarding the Custodian Agreements.

The Plaintiffs also argue that the Form 5305 Agreements are relevant to the issue of whether the Bank's omnibus account at BLMIS was a "common investment fund."  Plaintiff fails to state which language in Form 5305 is probative as to whether the Bank's account constituted a collective investment fund.  Form 5305 contains language that simply reflects §408's requirement that no trust account funds may be commingled with other property except in a common trust fund or common investment fund within the meaning of §408(a)(5).  Therefore, Form 5305, itself, would not aid the jury in determining whether the account constituted a collective investment fund within the meaning of §408(a)(5).   The Court further agrees with the Defendant that admission of IRS Forms 5305 and/or 5498 would likely result in confusion to the jury considering the technical language of the Forms which are predicated on the Internal Revenue Code and IRS regulations which are not at issue in this case.  The Plaintiffs have failed to establish the relevance and probative value of these forms and whatever probative value is outweighed by the risk of misleading and confusing the jury

particularly in light of the fact that PSCC Services, Inc. was responsible for preparing all tax forms and not the Bank.

> L. Motion *In Limine* to exclude the Plaintiffs from offering any expert testimony regarding collective investment funds [*Levinson* Dkt. #528]; [*Davis* Dkt. #300]; [*Short* Dkt. #193]

The Court GRANTS the Defendant's motion *in limine* to preclude the Plaintiffs from offering any expert evidence regarding whether the BLMIS account in the Bank's name constitutes a collective investment fund and was held by the Bank in a fiduciary capacity within the meaning of 12 C.F.R. §9.2. Rule 37(c) provides that a party who "fails to provide information or identify a witness as required by Rule 26(a) or (e) ... is not allowed to use that information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). "The purpose of Rule 37(c)(1) is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez,* 309 F.Supp.2d 600, 607 (S.D.N.Y.2004). In assessing whether to preclude an expert's report, courts consider the following factors: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Softel, Inc. v. Dragon Med. & Scientific Comm., Inc.,* 118 F.3d 955 (2d Cir.1997).

The Defendant argues that the Plaintiffs have not yet offered any expert testimony regarding collective investment funds and therefore should be precluded from introducing any such testimony at trial under Rule 37. The

16

**Defendant explains that the *Levinson* Plaintiffs' expert Rodgers had initially proffered an opinion regarding collective investment funds in his original expert report but during his deposition acknowledged that the issue went beyond the scope of his engagement and declared that he was declining to opine on whether the Bank's account constituted a collective investment fund. Rodgers then submitted a substituted expert report, in response to this Court's order on a prior motion *in limine*, which included no opinions regarding collective investment funds. As Rodgers has not proffered an opinion on collective investment funds in the operative expert report, the Court finds it appropriate to preclude him from offering one at trial under Rule 37.**

**In response to this motion *in limine*, Plaintiffs argue that the *Davis* Plaintiffs' expert, Henning, should be allowed to testify because he opined that if the parties' custodial arrangement involved the use of a common investment fund, then a national bank administering a common investment fund must comply with 12 C.F.R. §9.18. However, Henning does not opine that the Bank's account constituted a collective investment fund but merely restates the regulatory requirements which apply to collective investment funds and is therefore not probative to the ultimate issue of whether the Bank's account constituted a collective investment fund. Further, Henning actually testified at his deposition that it was his opinion that the custodial arraignment did *not* constitute a collective investment fund. It would therefore be improper to allow Henning to offer testimony at trial in direct contradiction to his prior disclosed**

17

opinion. Accordingly, the Plaintiffs are precluded from offering any expert testimony regarding collective investment funds at trial.

Although not raised by the parties but directly bearing on this evidentiary issue, the Court finds it appropriate to also preclude the introduction of the OCC regulations regarding collective investment funds themselves as these regulations without any expert testimony would be misleading and confusing to the jury outweighing their probative value. The regulations contain technical language with cross-references to portions of the Internal Revenue Code which would be confusing to the lay jury in the absence of expert testimony. *See* 12 C.F.R. §9.18. Further, the complexity of these regulations is underscored by the fact that one of Plaintiffs' expert declined to opine on whether the Bank's account constituted a collective investment fund, Plaintiffs' other expert opined that the account was not a collective investment fund, and the OCC commented in an examination that the custodial arrangement *did not* appear to involve the operation of a collective investment fund. See (the Bank's 56(a)(a) Statement in *Davis*, ¶25). In view of the fact that Plaintiffs have failed to offer any expert testimony and the complex and technical nature of the regulations at issue, the probative value of the regulations would be outweighed by the risk of misleading or confusing the jury. The Court will therefore consider whether a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is appropriate as it appears there is no admissible evidence in support of Plaintiffs' CUTPA claim.

**Finally, by virtue of the multiplicity of cases, the parties have had multiple opportunities to present issues and to recast them after the Court's prior rulings. These cases have been consolidated for trial, lead counsel has been selected and the parties are constrained by the Court's prior rulings.  Attempts to re-litigate matters that have gone to final judgment, matters that might have been raised and were not raised or bringing otherwise frivolous claims or defenses can result in sanctions, including personal liability for monetary sanctions.** *See* **Fed.R.Civ.P. 11;** *Manwani v. Brunelle,* **99 F.3d 400 (2d Cir. 1995) (affirming imposition of monetary sanctions on** *pro se* **litigant for relitigation of previously litigated claims);** *In re Martin Trigona,* **737 F.2d 1254, 1261 (2d Cir.1984) (discussing federal courts' inherent power to protect their jurisdiction from frivolous,  vexatious litigation);** *Sassower v. Field,* **973 F.2d 75, 79-81 (2d Cir.1992) (affirming imposition of monetary sanctions on Fed.R.Civ.P. 11 grounds and under the district court's "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons"),** *cert. denied,* **507 U.S. 1043 (1993).  In addition, any attempt to resurrect any theory or defense at trial which this Court has already ruled on will invite the Court to consider whether a mistrial should be declared in addition to the imposition of monetary sanctions.  To clarify, the following claims survived summary judgment and will be tried: (i) breach of contract based on the Bank's calculation of fees based on "assets"; (ii) breach of contract based on the Bank's failure to maintain adequate records and statements; (iii) breach of fiduciary duty; (iv) negligence (v) CUPTA claim on the basis of WNB's violation of OCC regulations; and (vi) unjust**

19

enrichment in addition to the affirmative defenses which were not the subject of a summary judgment motion.

                                         IT IS SO ORDERED.

                                        _____/s/_____

                                        Hon. Vanessa L. Bryant
                                        United States District Judge

Dated at Hartford, Connecticut: May 20, 2013